## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| KENNETH KESSLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  4:21-cv-00173-P |
| | § | |
| ALLSTATE FIRE AND CASUALTY | § | |
| INSURANCE COMPANY et al., | § | |
| | § | |
| Defendants. | § | |

## <u>OPINION AND ORDER</u>

In this first-party-insurance case the Court must consider a relatively new Texas statute's impact on the Court's subject matter jurisdiction.  *See* TEX. INS. CODE § 542A.006. The law allows an insurer to "elect to accept whatever liability an agent might have to the claimant for the agent's acts or omissions," and if the election is made after a claimant files suit, the court "shall dismiss the action against the agent with prejudice."  *Id.*  In this case, Plaintiff Kenneth Kessler sued his insurer, Allstate Fire and Casualty Insurance Company (who is diverse), and adjuster William Van Mason (who is non-diverse), in state court. Subsequently, Allstate elected to accept whatever liability Mason might have, but **before** the state court had taken any action dismissing Mason, Allstate removed the case under diversity jurisdiction, alleging that Mason was improperly joined at the time of removal.

Now before the Court is Plaintiff's Motion to Remand (ECF No. 9) and Allstate's Response (ECF No. 11).  A central question to resolving the Motion is whether the Court should consider Mason's citizenship.  The Fifth Circuit has not ruled on this question and

district courts are deeply divided.  *See Ramirez v. Allstate Vehicle & Prop. Ins. Co.*, 490 F.

Supp. 3d 1092 (S.D. Tex. 2020) (citing cases).

  Having now considered the parties' arguments, pleadings, Allstate's appendix, and

the applicable law, the Court concludes that it must consider Mason's citizenship, that

Mason was not improperly joined, and thus, that the Court lacks jurisdiction over this case.

Accordingly,  for  the  reasons  stated  below,  Plaintiff's  Motion  to  Dismiss  will  be

**GRANTED** and this case **REMANDED.**

**BACKGROUND**

This is a simple state-law coverage dispute.  Plaintiff alleges that on or about July

9, 2017, his property sustained extensive storm damage.  ECF No. 1-5 at ¶¶ 9–10.  Plaintiff

alleges that Allstate issued an insurance policy that covers the cost of the repairs and that

Plaintiff submitted a claim to Allstate.  *Id.* at ¶ 12.  Allstate sent its adjuster, Mason, out to

inspect the Property and Mason found that the losses were not covered.  *Id.* at ¶ 14.  Plaintiff

contends that Mason's inspection was substandard, that Mason misrepresented the cause

and  amount  of  damages,  and  that  Mason  ultimately  recommended  that  Allstate  deny

Plaintiff's claim.  *Id.* at ¶¶ 17–27.

On January 14, 2021, Plaintiff filed an original petition ("Orig. Pet.") against

Defendants Allstate and Mason in the 153rd District Court of Tarrant County, Texas.  Orig.

Pet., ECF No. 1-5.  Plaintiff alleged claims for breach of contract, unfair settlement

practices, breach of duty of good faith and fair dealing, and violations of DTPA (Orig. Pet.

at ¶¶ 36–51) against Allstate and claims of unfair settlement practices and violations of the

DTPA against Mason (*Id.* at ¶¶ 52–60).  On February 9, 2021, Allstate filed an answer

2

(ECF No. 1-8) and notice of election of responsibility for Mason (ECF No. 1-9) pursuant to Section 542A.006 of the Texas Insurance Code.  Allstate included a proposed order dismissing Mason, but **before** the order was signed, on February 22, 2021, Allstate removed the case to this Court.  ECF No. 1.

In its Notice of Removal ("Nt. of Removal"), Allstate asserted that this Court has diversity jurisdiction as the amount in controversy exceeds $75,000 and the parties are completely diverse.  *Id.* at ¶ 2.  With respect to the citizenship of the parties, Allstate acknowledged that Mason—like Plaintiff—is a citizen of Texas but argued that Mason's citizenship should be disregarded because Mason was improperly joined.  *Id.* at ¶¶ 2, 9. Allstate additionally asserted that Mason was improperly joined because Plaintiff's allegations fail to establish a cause of action against Mason and that Allstate's evidence affirmatively demonstrates that Plaintiff has no claim against Mason.  *Id.* at ¶¶ 18, 21.

Plaintiff filed a Motion to Remand, asserting that Mason was not improperly joined because it is undisputed that Allstate elected to accept responsibility for Mason after Plaintiff had filed suit.  ECF No. 9 at ¶ 12.  Moreover, Plaintiff argues that Allstate cannot carry its burden of establishing Plaintiff has no possibility of recovery against Mason because Texas law provides viable causes of action against adjuster's in first-party insurance disputes and because Plaintiff has pleaded sufficient facts to state such a claim. *Id.* at ¶¶ 12–18.  Finally, Plaintiff asserts the voluntary-involuntary rule is inapplicable as Mason is still a party and that remand is appropriate because Plaintiff could not have filed this case in this Court due to the lack of diversity.  *Id.* at ¶¶ 19–30.

3

Allstate responds that Mason was improperly joined because at the time of removal, there was no possibility of recovery against Mason due to Allstate's election of liability pursuant to Section 542A of the Texas Insurance Code.  ECF No. 11 at ¶ 9.  Allstate noted a split of authority on how to apply Section 542A when (as in this case) an election is made after the lawsuit was filed but before the case was removed.  *Id.* at ¶ 11.  Allstate urged the Court to rely on cases from the Western and Southern District Courts that focused on the possibility of recovery at the time of removal (after an election of liability) rather than looking at a possibility of recovery from the non-diverse adjuster at the time of filing.  *Id.* at ¶¶ 11–14 (citing *Koenig v. Unitrin Safeguard Ins. Co.*, No. SA-20-CV-00887-JKP-HJB, 2021 WL 51762 (W.D. Tex. Jan. 6, 2021); *Ramirez*, 490 F. Supp. 3d 1092).  Allstate additionally argues that Plaintiff has essentially used a form pleading and none of the allegations are accurate or sufficient to establish the possibility of recovery against Mason and that external evidence supports this.  *Id.* at ¶¶ 15–23.

The Motion to Remand is now ripe for review.

## LEGAL STANDARD

Motions to remand are governed by 28 U.S.C. § 1447(c), which provides that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  When considering a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper."  *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  When the party relies on improper joinder, the burden of persuasion is a "**heavy one**."  *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510,

4

514 (5th Cir. 2009) (emphasis added).  Additionally, the Court must "resolve any contested issues of material fact, and any ambiguity or uncertainty in the controlling state law" in Plaintiff's favor.  *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999).

## DISCUSSION OF APPLICABLE LAW

To determine whether Mason's citizenship should be considered for jurisdictional purposes, the Court must resolve two conflicting rules.  *First*, Plaintiff raises the voluntary-involuntary rule, which states that "an action nonremovable when commenced may become removable thereafter only by the voluntary act of the plaintiff."  *Hoyt v. Lane Const. Corp.*, 927 F.3d 287, 295 (5th Cir. 2019).  *Second*, Allstate cites the improper-joinder doctrine, which allows for the removal of actions when the plaintiff cannot "establish a cause of action against the non-diverse party in state court."  *Id.*  Although there have now been dozens of district court cases analyzing this conflict, no clear consensus has emerged.  *See Ramirez*, 490 F. Supp. 3d at 1102–03.  A proper application of these rules requires a full understanding of their pedigrees and rationales.

After conducting this inquiry below, the Court concludes that the two rules protect different interests that sit in tension:  the voluntary-involuntary rule protects a plaintiff's right to choose its forum; the improper-joinder rule protects a defendant's right to a federal forum.  Each rule must have some application, and neither can destroy the other.

**A.      Principles of federalism and separation of powers limit federal jurisdiction.**

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (Roberts, C.J.) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994)); *cf. Bank of U.S. v. Deveaux*, 9 U.S. 61, 87 (1809) (Marshall, C.J.) ("The duties of this court, to exercise jurisdiction where it is conferred, and not to usurp it where it is not conferred, are of equal obligation."), *overruled in part by Louisville, C. & C.R. Co. v. Letson*, 43 U.S. 497, 11 L. Ed. 353 (1844).  The Supreme Court has instructed that federal courts must "scrupulously confine" their jurisdiction to the statutory text that gives diversity jurisdiction:

> The policy of the [diversity] statute calls for its strict construction.  The power reserved to the states, under the Constitution (Amendment 10), to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution (article 3).  Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.

*Healy v. Ratta*, 292 U.S. 263, 270 (1934); *cf. City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63, 76 (1941) ("The dominant note in the successive enactments of Congress relating to diversity jurisdiction is one of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to the state courts' in order to keep them free for their distinctive federal business.").  These concerns require this Court to "presume that a suit lies outside [its] limited jurisdiction."  *Howery v. Allstate ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).[1]

---

[1]*Cf.* THE FEDERALIST NO. 17 (Alexander Hamilton) (writing as "Publius") (stating that "the ordinary administration of criminal and civil justice" would be left to the states); *and* Letter from Thomas Jefferson to James Madison (Mar. 15, 1789), in THE LIFE AND SELECTED WRITINGS OF THOMAS JEFFERSON 426 (Adrienne Koch & William Peden, eds., 2004 Modern Library Paperback

**B.    Section 1441 permits defendants to remove cases with complete diversity.**

Allstate argues that the Court has removal jurisdiction.  *See* 28 U.S.C. § 1441.  This statute creates jurisdiction over cases filed in state court that could have originally been brought in federal court.  The statute states:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

*Id.* § 1441(a).  Due to the presumption against federal jurisdiction, the removal statute is to be "strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand."  *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007) (cleaned up).  "This is so because 'removal jurisdiction raises significant federalism concerns.'"  *Duncan v. Safeco Ins. Co.*, No. 7:20-CV-119-M-BP, 2020 WL 6811485, at *1 (N.D. Tex. Oct. 30, 2020) (Ray, M.J.) (quoting *Willy v. Coastal Corp.*, 885 F.2d 1160, 1164 (5th Cir. 1988)).

In this case, Allstate relies on the original-jurisdiction ground of diversity jurisdiction.  *See* 28 U.S.C. § 1332(a).  Diversity jurisdiction grants district courts original jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the parties have completely diverse citizenship, meaning "that all persons on one side of the

_____

ed.) (1944) (The federal "judiciary . . . is a body, which, if rendered independent and kept strictly to their own department, merits great confidence for their learning and integrity.")

controversy be citizens of different states than all persons on the other side." *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (citation omitted).

**C.    Under Section 1446(b), a case not originally removable can become removable, but only through the plaintiff's voluntary act.**

If a case develops diversity jurisdiction after the initial pleading, then it can also be removed. *Hoyt,* 927 F.3d at 295. Section 1446(b)(3) governs this situation. Subject to exceptions not applicable here:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3).   Although not in the statutory text, it is well established that "*only the voluntary dismissal or nonsuit by the plaintiff of a party or of parties defendant can convert a nonremovable case into a removable one.*" *Hoyt*, 927 F.3d at 295 (cleaned up) (emphasis in original).

This rule was created by the Supreme Court. *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 547 (5th Cir. 1967).   Beginning in 1898, the Supreme Court approved of defendant's removal after the plaintiff dismissed the only non-diverse defendant. *See Powers v. Chesapeake & O. Ry.*, 169 U.S. 92 (1898).   The Court acknowledged that diversity did not exist at the time of filing in state court, but it held that jurisdiction arises "as the action assumes the shape of a removable case in the court in which it was brought." *Id.* at 101.

A few years later, the Supreme Court clarified that only the plaintiff's voluntary act can create federal jurisdiction. *Whitcomb v. Smithson*, 175 U.S. 635 (1900). By 1918, the Supreme Court was able to say that it was

> settled that a case . . . cannot be converted into a removable one by evidence of the defendant or by an order of the court upon any issue tried upon the merits, but that such conversion can only be accomplished by the voluntary amendment of his pleadings by the plaintiff or, ***where the case is not removable because of joinder of defendants, by the voluntary dismissal or nonsuit by him of a party or of parties defendant***.

*Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 280 (1918) (emphasis added). By the 1940s, the rule was well known:

> [I]f the resident defendant was dismissed from the case by the voluntary act of the plaintiff, the case became removable, but if the dismissal was the result of either the defendant's or the court's acting against the wish of the plaintiff, the case could not be removed.

*Weems*, 380 F.2d at 546. This rule reflects the well-cited policy of making the plaintiff the master of the complaint. JAMES WM. MOORE, 16 MOORE'S FED. PRAC. § 107.140[3][a][C] (3rd ed. 2020). The Supreme Court relied on this policy. *See e.g.*, *Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 282 (1918) ("The obvious principle of these decisions is that . . . the plaintiff may by the allegations of his complaint determine the status with respect to removability of a case . . . when it is commenced, and that this power to determine the removability of his case continues with the plaintiff throughout the litigation . . . ."). This makes the voluntary-involuntary rule the diversity-jurisdiction corollary to the well-pleaded complaint rule. 16 MOORE'S FED. PRAC. § 107.140[3][a][C]. Since this rationale underlies the rule, this Court must adhere to it. BRYAN A. GARNER ET AL., THE LAW OF

JUDICIAL PRECEDENT, 27 (2016) ("The rule is that courts must adhere not just to the result but also to any reasoning necessary to that result.").

Even though the Supreme Court held that the voluntary-involuntary rule arises from the plaintiff's control over the case, later courts justified the voluntary-involuntary rule on grounds that it prevents removal of state-court actions that may get reversed on appeal. *See Hoyt*, 927 F.3d at 297 ("When a state court order creates diversity jurisdiction and that order cannot be reversed on appeal, our precedent treats the voluntary-involuntary rule as inapplicable.") (citing *Crockett*, 436 F.3d at 533). But, the "equation of finality with removability does not comport with several early Supreme Court decisions in which removal was denied even though the state court actions that arguably made the cases removable had been affirmed by or had originated in the state's highest court." 16 MOORE'S FED. PRAC. § 107.140[3][a][C] (citing *e.g. Great N. Ry. Co.*, 246 U.S. 276 (order denying non-resident defendant's application for removal originated in Montana Supreme Court)). As a district court put it, "[w]hat emerges from an examination of the Supreme Court cases on the voluntary-involuntary rule is the conclusion that the rule is not based upon an appealability/finality rationale but upon a policy favoring the plaintiff's 'power to determine the removability of his case.'" *Jenkins v. Nat'l Union Fire Ins. Co.*, 650 F. Supp. 609, 613–14 (N.D. Ga 1986).

In 1949, Congress codified voluntary-involuntary rule. *Weems*, 380 F.2d at 547. The original statute, and all subsequent versions, do not mention anything about the voluntary-involuntary rule, but after analyzing this issue, the Fifth Circuit came to the "firm conviction" that the "voluntary-involuntary rule was not affected by the amendment, and

therefore remains part of today's applicable law." *Id.* at 548.  This statutory interpretation remains the law today.  *See* GARNER ET AL., THE LAW OF JUDICIAL PRECEDENT, 333 ("Stare decisis applies with special force to questions of statutory construction."); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 274 (2014) (Roberts, C.J.) ("The principle of *stare decisis* has special force in respect to statutory interpretation because Congress remains free to alter what we have done." (quoting *John R. Sand & Gravel Co. v. U.S.*, 552 U.S. 130, 139 (2008))).  Since then, this interpretation has been routinely followed and relied upon by district courts.  *See, e.g.*, *Mumfrey v. Anco Insulations, Inc.*, CV No. 11-2284, 2011 WL 4745626 (E.D. La. 2011) (remanding case based on voluntary-involuntary rule); *Jenkins*, 650 F. Supp. at 611 (remanding and noting that "Section 1446(b) has been interpreted to preserve the voluntary-involuntary rule").

**D.    The judge-made improper joinder rule precludes a plaintiff from improperly joining a non-diverse defendant to defeat diversity.**

A separate rule relating to removal jurisdiction is the improper-joinder rule.  Under this rule, a defendant can claim that a plaintiff improperly added a non-diverse defendant to defeat diversity jurisdiction.  *See Pullman Co. v. Jenkins*, 305 U.S. 534, 541 (1939) ("It is always open to the non-resident defendant to show that the resident defendant has not been joined in good faith and for that reason should not be considered in determining the right to remove.").  "The doctrine of improper joinder rests on . . . statutory underpinnings, which entitle a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'"  *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (citing 28 U.S.C. §§ 1359, 1441(b)).  Despite the purpose of the inquiry

11

being to determine if the defendant has been joined solely to defeat diversity, the plaintiff's subjective motive is irrelevant. *Id.* at 582 (Jolly, J., dissenting). If the court concludes the non-diverse party's joinder was improper, then that party's citizenship is disregarded. In effect, the resident defendant is held to have never properly been before the court. *See* 16 MOORE'S FED. PRAC. § 107.140[3][a][C]

A non-diverse defendant is improperly joined if "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Ramirez*, 490 F. Supp. 3d at 1105. To aid in determining this, the Fifth Circuit has articulated three tests: (1) actual fraud in the pleading of jurisdictional facts, (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court, or (3) if a state court has come to judgment, the federal court must ask whether there is any reasonable possibility that the judgment will be reversed on appeal. *Smallwood*, 385 F.3d at 573; *Hoyt*, 927 F.3d at 296. Each test probes for the plaintiff's ability to recover against the non-diverse defendant: "If no reasonable basis of recovery exists, a conclusion can be drawn that the plaintiff's decision to join the local defendant was indeed fraudulent," and therefore improper. *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005).

The Fifth Circuit affirmed this broad application of the improper joinder doctrine in *Hoyt*, 927 F.3d 287. In *Hoyt*, the state court entered summary judgment in favor of the non-diverse defendant. The *Hoyt* majority concluded the summary judgment removed the

12

non-diverse defendant from the case and that the plaintiff had abandoned any appeal.[2] *Id.*
at 297. Thus, according to the *Hoyt* majority, recovery against the non-diverse defendant
was impossible, and the district court's order assuming diversity jurisdiction was affirmed.
*Id.* From this case, district courts have induced a clear-cut rule: a non-diverse defendant is
improperly joined when "the [diverse] defendant has demonstrated that there is no
possibility of recovery by the plaintiff against the in-state defendant . . . ." *Ramirez*, 490
F. Supp. 3d at 1105.

## ANALYSIS

District courts have struggled to apply these rules to cases removed after a Texas
Insurance Code § 542A.006 election. All courts seem to agree that an insurer's pre-filing

---

[2]With due respect to the learned and distinguished Fifth Circuit panel, the undersigned must
disagree with this conclusion. The Texas trial court's summary judgment order did not "remove
the non-diverse defendant from the case and it was not a final, appealable order under Texas law.
*See Lehmann v. Har-Con Corp.*, 39 S.W. 3d 191, 205 (Tex. 2001) ("[W]hen there has not been a
conventional trial on the merits, an order of judgment is not final for purposes of appeal unless it
. . . unequivocally states that it finally disposes of all claims and parties.").

   Rather, as a former Texas judge on both the trial and appellate bench, the undersigned
agrees with Judge Haynes's dissent in *Hoyt*, where she notes that Texas procedure actually
prevented the non-diverse defendant from appealing the order at that point, leaving the non-diverse
party in the case. *Hoyt*, 927 F.3d at 300–01 (Haynes, J., dissenting); *see also e.g.*, *Park Place
Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510 (Tex. 1995) ("All parties and all issues before the
trial court must be disposed of before a summary judgment becomes final and appealable."); 
*Callaway v. Martin*, No. 02-16-00181-CV, 2017 WL 2290160, at *3 n.3 (Tex. App.—Fort Worth
May 25, 2017, no pet.) (Sudderth, J.) ("A trial court has plenary power—power that is full, entire,
complete, absolute, perfect, and unqualified—over, and therefore the jurisdiction and authority to
reconsider, not only its judgment but also its interlocutory orders until thirty days after the date a
final judgment is signed or, if a motion for new trial or its equivalent is filed, until thirty days after
the motion is overruled by signed, written order or operation of law, whichever first occurs."). 
Thus, as Judge Haynes states, the Fifth Circuit lacked jurisdiction over the *Hoyt* appeal and the
non-diverse party was not improperly joined.

election requires district courts to disregard a non-diverse agent joined as a defendant. *Ramirez*, 490 F. Supp. 3d at 1103; *see also Lewis v. Safeco Ins. Co. of Indiana*, No. 4:21-CV-00149-P, 2021 WL 1250324, at \*3 (N.D. Tex. Apr. 5, 2021) (Pittman, J.) (considering a case when the election of liability occurred before the suit was filed and concluding that, "because at the time of removal—indeed, at the time Plaintiffs filed their original petition—there was no possibility of recovery against [the adjuster], dismissal [of the adjuster] is proper"). But if the insurer's election occurs post-filing, there are two lines of cases:

- *Stephens* **View:** In this view, sometimes called the "majority view," the "timing of an insurer's election is critical to a court's improper joinder inquiry. . . . [If the] election is made after an insured commences action, a diverse defendant-insurer cannot rely solely on the fact that the insured is now prohibited from recovering against the non-diverse adjuster." *Stephens v. Ins. Co. of Ind.*, No. 4:18-CV-595, 2019 WL 109395, at \*6–7 (E.D. Tex. Jan. 4, 2019) (Mazzant, J.). Thus, "even though there is no possibility a plaintiff will recover against the non-diverse defendant in state court following an insurer's post-suit election, these courts have declined to find improper joinder and granted remand." *Bexar Diversified MF-1, LLC v. Gen. Star Indem. Co.*, No. SA-19-CV-773-XR, 2019 WL 6131455, at \*3 (W.D. Tex. Nov. 18, 2019).

- *Ramirez* **View:** This view, sometimes called the "minority view," holds that "a § 542[A].006 election made after a lawsuit commences but before removal renders the in state adjuster improperly joined because the election, which requires that the adjuster be dismissed with prejudice, precludes any recovery against the adjuster." *Ramirez*, 490 F. Supp. 3d at 1103.

Complicating matters further, while the district courts were working this issue out, the Fifth Circuit issued the *Hoyt* opinion. Since then, the tables have turned and the minority view

14

has been dominant.  *See e.g.*, *Southbound, Inc. v. Firemen's Ins. Co. of Washington, D.C.*, No SA-21-CV-78-XR, 2021 WL 932045, at *3 (W.D. Tex. Mar. 10, 2021).

For the reasons below, the Court adopts the *Stephens* line of cases.  In doing so, the Court accepts and enlarges the rationale the majority view rests on.

## A.   The voluntary-involuntary rule does not provide removal jurisdiction because diversity was not created by a voluntary act of Plaintiff and because Mason has not been dismissed.

It is undisputed that at the time Plaintiff filed his original petition in Texas state court, Allstate had not elected to accept liability on behalf of its adjuster Mason.  And it can hardly be disputed that as a general matter, an insured Texan may maintain a claim against an insurance adjuster for the conduct that Plaintiff complains of.  *See, e.g.*, *Gasch*, 491 F.3d 278; *Denley Group, LLC v. Safeco Ins. Co. of Indiana*, No. 3:15-CV-1183-B, 2015 WL 5836226, at *3 (N.D. Tex. Sept. 30, 2015) (Boyle, J.) ("Both the Texas Supreme Court and the Fifth Circuit have recognized that an insurance adjuster may be held individually liable for violating chapter 541 of the Insurance Code.").  While Allstate's § 542A election changed that *after* Plaintiff filed the case, Allstate's election was not Plaintiff's voluntary act.  Thus, at the time Plaintiff sued Mason, the case could not have been removed.  ECF No. 9 at 12.

The voluntary-involuntary rule's relevance is clear: only after Mason was sued, through Allstate's unilateral act, did Plaintiff's chance of recovery against Mason vanish. Allstate's "decision is not contingent on and does not anticipate [Plaintiff's] assent. Section 542A.006, moreover, provides no indication that [Plaintiff] may decline [Allstate's] election, and requires that a court dismiss [Mason] if an election is made.  This

15

entire process is done without [Plaintiff's] agreement, contrary to [his] wishes, and is therefore involuntary." *Stephens*, 2019 WL 109395, at \*4.

Under 28 U.S.C. § 1446(b), only the plaintiff's voluntary acts can create federal jurisdiction. *See Weems*, 380 F.2d at 548. Mason was not dismissed through Plaintiff's voluntary acts. Indeed, Mason is still a party to this action. Thus, absent some overriding rule, the case must be remanded to state court.

**B.      Allstate has failed to establish improper joinder based on its post-filing Section 542A.006 election.**

Against this conclusion, Allstate cites several district court cases for the proposition that a Section 542A election of responsibility post-suit but pre-removal is sufficient to satisfy Allstate's improper-joinder burden. ECF No. 11 at ¶¶ 12–14 (citing *Koenig*, 2021 WL 51762, at \*3; *Ramirez*, 490 F. Supp. 3d 1092). Allstate focuses its argument on *Ramirez* which relies on *Hoyt v. Lane Construction Corp.*, 927 F.3d 287 (5th Cir. 2019), for the proposition that "[i]mproper joinder does not necessarily mean that joinder was improper when made, improper joinder can also be established by showing 'the inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" ECF No. 11 at ¶ 14 (quoting *Hoyt*, 927 F.3d at 296–97). Thus, Allstate believes the inquiry *at the time of removal* necessitates a finding that Plaintiff cannot recover against Mason *now that Allstate has elected* to assume responsibility for Mason. In other words, Allstate adopts and argues the "minority view" from above.

The undersigned respectfully disagrees and adopts the majority view. Allstate's authority is factually distinguishable or dicta. No binding authority controls this conflict

16

between the two rules.  In the absence of binding authority, the Court turned to the rules' underlying policies and rationales for guidance.  These rules' policies clarify that a *post*-filing and *pre*-removal § 542A.006 election cannot convert a properly joined defendant into an improperly joined defendant.  *See Stephens*, 2019 WL 109395, at *5 ("Whether a non-diverse defendant is improperly joined is a binary question; the defendant is either a proper party when joined to suit or the defendant is an improper party when joined to the suit. . . .  It does not follow that a non-diverse defendant that is initially properly joined may become initially improperly joined"); *see also Duncan v. Safeco Ins. Co. of Indiana*, No. 7:20-CV-00119-M-BP, 2020 WL 6811485, at *3 (N.D. Tex. Oct. 30, 2020) (Ray, M.J.) ("[A] party that is properly joined when the case begins cannot on these facts become improperly joined thereafter."), *report and recommendation adopted*, No. 7:20-CV-00119-M-BP, 2020 WL 6799180 (N.D. Tex. Nov. 19, 2020) (Lynn, C.J.).  Moreover, properly understood, the improper-joinder rule acts not as an exception to the voluntary-involuntary rule, but as a counterweight.  The minority view fails to properly weigh the interest protected by the voluntary-involuntary rule.  This conclusion is buttressed by the bedrock principles of federalism and separation-of-powers, which caution against expanding federal jurisdiction in close cases.[3]  Accordingly, the Court concludes that in post-filing § 542A.006 elections, the improper-joinder rule is inapplicable.

---

[3]*See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17–18 (1951) ("The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties.  To permit a federal trial court to enter a judgment in a case removed without right from a state court where the federal court could not have original jurisdiction of the suit even in the posture it had at the time of judgment, would by the act of the parties work a wrongful extension

1.    No binding authority controls § 542A.006 removals.

Allstate and the minority rule claim that Fifth Circuit precent binds the Court to find Plaintiff improperly joined Mason because jurisdictional facts must be determined at the time of removal.  According to this view, an in-state defendant is improperly joined when "the [diverse] defendant has demonstrated that there is no possibility of recovery by the plaintiff against the in-state defendant . . . ."  *Ramirez*, 490 F. Supp. 3d at 1105.  This rule flows from *Hoyt* and is carefully and logically applied by the Honorable Judge Alvarez in *Ramirez*, 490 F. Supp. 3d 1092.  As *Ramirez* correctly notes, the Fifth Circuit has repeatedly stated that, in removal cases, district courts must "consider the claims in the state court petition as they existed *at the time of removal* . . . ."  *Id.* at 1104 (emphasis in original) (citing cases).  And after a § 542A.006 election—"irrespective of the time [the § 542A] election is made"—there is no possibility of recovery against the agent at the time of removal.  *Id.* at 1111.  It would thus seem to follow that these cases are removable.

But the phrase this rule rests on—"at the time of removal"—has never been part of Fifth Circuit holdings.  None of the holdings cited in either *Ramirez* or *Hoyt* relied on the analysis's timing.  In each opinion, no material facts changed between the plaintiff filing

_____

of federal jurisdiction and give district courts power the Congress has denied them."); *Cf.* Letter from Thomas Jefferson to James Madison, (Jun. 20, 1787), in THE PAPERS OF JAMES MADISON, VOL. 10, 27 MAY 1787–3 MARCH 1788, 63-67 (Robert A. Rutland, Charles F. Hobson, William M. E. Rachal, and Frederika J. Teute, eds., The University of Chicago Press, 1977) ("It will be said, that [a federal] court may encroach on the jurisdiction of the State courts. It may.  But there will be a power, to wit, Congress, to watch and restrain them.  But place the same authority in Congress itself, and there will be no power above them, to perform the same office. They will restrain within due bounds, a jurisdiction exercised by others, much more rigorously than if exercised by themselves.").

the case and the defendant's removal.  *See Hoyt*, 927 F.3d 287 (holding plaintiff's claim against non-diverse defendant was never valid); *Chavez v. State Farm Lloyds*, 746 F. App'x 337 (5th Cir. 2018) (deciding removal jurisdiction under 28 U.S.C. § 1441(a)); *Cuevas v. BAC Home Loans Servs., LP*, 648 F.3d 242 (5th Cir. 2011) (holding plaintiff's claim against non-diverse defendant was never valid); *Morgan v. Chase Home Fin.*, 306 F. App'x 49 (5th Cir. 2008) (same); *Campbell v. Stone Ins., Inc.*, 509 F.3d 665 (5th Cir. 2007) (same); *Crockett*, 436 F.3d at 533 (holding non-diverse defendant was originally misjoined to the case); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720 (5th Cir. 2002) (deciding removal jurisdiction under 28 U.S.C. § 1441(a)).  This phrase is dicta.

These authorities contrast with this case's facts.  As noted above, there is no question that this case could not have been originally filed in federal court.  That is because, at the time of filing, Plaintiff had claims against the non-diverse defendant, Mason.  Allstate's § 542A election changed that *after* Plaintiff filed the case.  And Allstate's election was not Plaintiff's voluntary act.  Thus, at the time Plaintiff sued Mason, the case could not have been removed.  And therefore, the Plaintiff's *joinder* of Mason was proper.  Only later— after Allstate's election—did any chance of recovery against Mason vanish.  *Cf. Stowell*, 2020 WL 3270709, at *4 ("*Hoyt* differs from the present case in that here the nondiverse defendant was not dismissed by the state court **prior to** removal.") (emphasis added).

This distinguishing fact is important because there are no binding authorities that control this situation. The minority view and *Ramirez* rely on "at the time of removal" for its analysis.  But as shown, this is not binding.  The majority view too bases its analysis on one short phrase: "the focus of the [improper-joinder] inquiry must be on the joinder, not

19

on the merits of the plaintiff's case." *Smallwood*, 385 F.3d at 573.  The majority view reasons that this dictates that the analysis must be made at the time of filing.  *See Stephens*, 2019 WL 109395, at *6–7.  But as *Ramirez* correctly notes, that line too, which is quoted in numerous Fifth Circuit opinions, is dicta.  The result of all this is that the factual situation caused by § 542A.006 is novel—no binding authority controls.

 2.  The improper-joinder rule's rationale does not apply to post-filing § 542A.006 elections.

Without binding authority, the Court must rely on the policy and rationale supporting the improper-joinder rule.  The improper-joinder rule holds that the non-diverse defendant never should have been a party.   16 MOORE'S FED. PRAC. § 107.140[3][a] ("When, however, a case is dismissed because . . . there was a fraudulent joinder of parties, the court's finding amounts to a determination that the resident defendant was never properly before the court . . . .").  As the Fifth Circuit has said: "If no reasonable basis of recovery exists, a conclusion can be drawn that the plaintiff's decision to join the local defendant was indeed fraudulent[,]" and therefore improper.  *McDonal*, 408 F.3d at 183. As shown above, this rationale explains the improper-joinder rule's past application.  If the non-diverse defendant never should have been a defendant at all, its dismissal—whether voluntary or involuntary—is irrelevant.  It follows that, generally, in a conflict between the voluntary-involuntary rule and the improper-joinder rule, the improper-joinder rule wins. *See Hoyt*, 927 F.3d at 295 (citing *Great N. Ry. Co.*, 246 U.S. at 282; and *Crockett*, 436 F.3d at 532).

20

But the rationale does not support an improper-joinder finding in a post-suit, pre-removal Section-542A.006-acceptance-of-liability context when the plaintiff's claims against the non-diverse defendant were initially valid. In this situation, it is simply false to say an improper-joinder finding amounts to a determination that the non-diverse defendant was *never* properly before the court. He was. So far as this Court is aware, no Fifth Circuit case holds that the improper-joinder rule requires courts to pretend that a defendant that was initially joinder properly *became* improperly joinder later. This does not follow from the rule's rationale.

      3.    <u>Considering the improper-joinder rule an "exception" to the voluntary-involuntary rule results in the "exception" swallowing the rule.</u>

Many cases state that the improper-joinder rule acts as an exception to the voluntary-involuntary rule. But this is a misnomer. *See* Jeff Fisher, Note, *Everybody Plays the Fool, Sometimes; There's No Exception to the Rule: Procedural Misjoinder Is Not an Exception to the Voluntary-Involuntary Rule*, 60 BAY. L. REV. 993, 1013 (2008) (stating that the two rules "work perfectly in conjunction; neither is truly an 'exception' to the other"). Each case that uses the word "exception" holds that the non-diverse party was never properly before the court. If the non-diverse defendant never should have been a defendant at all, its dismissal—whether voluntary or involuntary—is irrelevant. It follows that, generally, in a conflict between the voluntary-involuntary rule and the improper-joinder rule, the improper-joinder rule wins. *See Hoyt*, 927 F.3d at 295 (citing *Alexander*, 246 U.S. at 282; and *Crockett*, 436 F.3d at 532). But that does not make it and "exception."

21

And this is not mere semantics.  Using this "exception" as its foundation, the *Ramirez* view effectively wipes out the voluntary-involuntary rule.  *See* Fisher, 60 BAY. L. REV. at 1017 (predicting that treating the improper-joinder rule as an exception to the voluntary-involuntary rule "could herald the end of the [voluntary-involuntary] rule"). This is unwise because voluntary-involuntary rule protects the plaintiff's right to "determine the removability of his case . . . ." *Alexander*, 246 U.S. at 282.  In other words, the plaintiff the master of the complaint.  16 MOORE'S FED. PRAC. § 107.140[3][a][C].  As shown above, the Fifth Circuit has based its improper-joinder rule on the wrong rationale: that the dismissal cannot be reversed.  The Supreme Court has never been endorsed this rationale, and it has explicitly articulated the alternate rationale that a plaintiff has the right to choose its forum.  *See Jenkins*, 650 F. Supp. at 613–14.  Here, Plaintiff wants to be in state court.  Under these facts, the voluntary-involuntary rule protects his right.

Not only is this "exception" unwise, it is impermissible.  As noted above, the voluntary-involuntary rule has been incorporated into statute.  *See Weems*, 380 F.2d at 548; *Jenkins*, 650 F. Supp. at 611 (stating that "Section 1446(b) has been interpreted to preserve the voluntary-involuntary rule").  "Stare decisis applies with special force to questions of statutory construction."   GARNER, ET AL., THE LAW OF JUDICIAL PRECEDENT, 333. Moreover, the Supreme Court has held that voluntary-involuntary rule exists.  The Fifth Circuit lacks the authority to overrule it.  The voluntary-involuntary rule must have some application.

But as articulated in *Ramirez*, the improper-joinder test eviscerates the voluntary-involuntary rule.  Under the *Ramirez* interpretation, all of plaintiff's involuntary dismissals

could result in a removal.  The *Hoyt* majority opinion demonstrates this danger: even a contested summary judgment fails to implicate the voluntary-involuntary rule.  If that is not an involuntary dismissal, then nothing is.  The same is true here: Plaintiff alleged an undisputedly valid claim against a non-diverse defendant.  *Later*, due to Allstate's § 542A unilateral acts, the claims against that party became invalid.  If the voluntary-involuntary rule does not apply in this situation, the Court is at a loss to think of situation it would apply.  For the reasons stated in this opinion, the undersigned judge considers § 1446(b) and the Supreme Court's pronouncements stronger authority than the *Hoyt* majority opinion and declines to extend the distinguishable reasoning in *Hoyt* to this case.

       4.    <u>The legal standard dictates remand.</u>

Ultimately this is a close question of law, and in an area of law—improper-joinder jurisprudence—that is notoriously opaque.  *See Ramirez*, 490 F. Supp. 3d at 1107 (stating this law has "confusing precedent").  It is therefore paramount to view it through the proper lens.  Federal courts "must presume that a suit lies outside [its] limited jurisdiction." *Howery*, 243 F.3d at 916.  Removal statutes must be "strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand."  *Gasch*, 491 F.3d at 281–82 (cleaned up).  Additionally, the Court must "resolve any contested issues of material fact, and any ambiguity or uncertainty in the controlling state law" in Plaintiff's favor.  *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999).

Thus, viewing the law and facts through the appropriate lens, the Court concludes that the majority view, as articulated in the *Stephens* line of cases, most compelling and adds a separate basis for adopting this position.  *See Stephens*, 2019 WL 109395, at *7

23

("Simply put, if an insurer elects to accept full responsibility of an agent/adjuster after the insured commences action in state court, the insurer must prove that the non-diverse adjuster is improperly joined for reasons independent of the election made under Section 542A.006 of the Texas Insurance Code.").  Accordingly, the Court finds that Mason was not improperly joined due to Allstate's post-suit Section 542A.006 election of liability.

**C.    Plaintiff has alleged facts to support his claims against Mason.**

Finally, the Court considers Allstate's contention that Plaintiff's "factual allegations are patently false."  Resp. to Mt. to Remand at ¶ 18.  To support its assertion, Allstate references other lawsuits with Plaintiff's counsel which have nearly identical allegations against other adjusters.  *Id.*  Allstate argues that many are "statute-tracking allegations" and "boilerplate statements."  *Id.*

Having reviewed Plaintiff's factual allegations against Mason as well as the attachments to Allstate's Response, the Court finds that Plaintiff has pleaded sufficient facts to support his claims against Mason for unfair settlement practices.  *See Arana v. Allstate Tex. Lloyds*, No. 3:13-CV-0750-D, 2013 WL 2149589, at *5 (N.D. Tex. May 17, 2013) (Fitzwater, C.J.) ("Because the court concludes that the petition sufficiently states a claim against Patrick for violating § 541.060(a)(2), it need not address the viability of Arana's other claims against Patrick."); *Landor v. State Farm Lloyds*, No. 3:12-CV-4268-M, 2013 WL 1746003, at *3 (N.D. Tex. Apr. 23, 2013) (Lynn, J.) (holding that allegations created reasonable possibility "that Plaintiff could prevail on at least *one* of her claims" against nondiverse defendant, and thus, "[i]n light of this conclusion, the Court need not analyze the viability of Plaintiff's other causes of action").  The fact that a plaintiff's

24

attorney makes similar allegations in a variety of similar first-party insurance disputes hardly demonstrates that Plaintiff cannot recover against Mason or that Plaintiff's allegations are "patently false." (This is a garden-variety storm-damage coverage case governed by Texas law, of course Plaintiff's attorney used similar allegations in other suits!) Moreover, the Court finds that Allstate's evidence attempting to challenge the veracity of the allegations in Plaintiff's pleadings goes to merits of Plaintiff's claims against Mason rather than jurisdictional facts. *See Smallwood*, 385 F.3d at 573–74. Indeed, Allstate questions Plaintiff's motive or purpose in joining Mason, which is wholly inappropriate at this stage. *See id.* at 574 ("In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant."). Therefore, the Court finds that Mason was not improperly joined.

## CONCLUSION

For these reasons, the Court concludes that Plaintiff's voluntary acts did not create diversity, and that Allstate has not established improper joinder of Mason. Accordingly, Plaintiffs motion to remand is **GRANTED** and the Court hereby **ORDERS** that this case is **REMANDED** to the **153rd District Court of Tarrant County, Texas**. The Clerk of this Court is **INSTRUCTED** to mail a certified copy of this Order to the District Court of Tarrant County, Texas.

**SO ORDERED** on this **25th** day of **May, 2021.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

25